Y. HATA *v.* DEAN WITTER, ET AL.

No. 2088.

SUBMITTED JULY 6, 1933.                    DECIDED JULY 14, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE GODBOLD
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY PERRY, C. J.

This is an action of assumpsit. The declaration contains three counts. In the first it is alleged that on or about September 6, 1930, "pursuant to prior arrangements effected between the plaintiff and defendants, the said defendants had in their possession belonging to the plaintiff, or held to the credit of the plaintiff," the following shares of corporate stocks: Fifty shares of Radio Corporation of America, twenty-five shares of Electric Bond & Share Company, twenty-five shares of Bendix

Aviation Corporation, twenty-five shares of General Electric Company and one hundred shares of Commonwealth & Southern Corporation; that the defendants so held these stocks "as security for the payment of an indebtedness of the plaintiff to the defendants in the sum of $4,783.60, under an agreement entered into between the plaintiff and the defendants to deliver said shares of stock to the plaintiff upon payment by him to said defendants of said indebtedness, or upon plaintiff's instructions, to sell said shares and apply the proceeds thereof to the payment of said indebtedness and to render and pay over to the plaintiff any overplus of such proceeds;" that on September 19, 1930, the plaintiff "instructed the defendants to sell the said shares of stock, pursuant to said agreement, and apply the proceeds thereof to plaintiff's said indebtedness and to pay over the overplus of such proceeds to the plaintitff, also in accordance with said agreement, but the said defendants refused to sell" the stocks "or to account to the plaintiff for the value thereof, or to deliver said shares to the plaintiff;" that the stocks referred to "are listed and dealt in on the New York stock exchange and the New York curb market, of both of which the defendant partnership is a member, and immediately after said instructions by the plaintiff to sell said shares there were many daily transactions in the stock of the said corporations upon said exchange and market and the aforesaid shares could have been readily sold for the total sum of $7,490.62 if said shares had been offered for sale immediately after plaintiff's said instructions;" and that by reason of the failure of the defendants to sell the stocks the plaintiff was damaged in the sum of $2,707.02 (being the difference between the alleged market value of $7,490.62 and the indebtedness of $4,783.60) and that "thereupon the defendants became indebted to the plaintiff in the said sum of $2,707.02, with interest."

The second count contains the same allegations as the first except that the statement is there made that on September 19, 1930, "pursuant to arrangements effected between the plaintiff and the defendants on or about the 6th day of September, 1930, the plaintiff became entitled from the defendants to the delivery of the shares of corporate stocks * * * upon payment by the plaintiff to the defendants of an indebtedness of the plaintiff to the defendants in the sum of $4,783.60, or at the option of the plaintiff, to the proceeds of a sale of such stock, which the defendants undertook to effect on instructions from the plaintiff and to pay over such proceeds to plaintiff after deducting therefrom the said indebtedness of the plaintiff to said defendants."

The third count contains the same allegations as the first with the exception that it alleges that on or about September 6, 1930, "an accounting was had between the plaintiff and said defendants, and an account stated between them, of and concerning prior transactions had between the plaintiff and said defendants as plaintiff's brokers in connection with prior stock transactions between them, and upon such accounting it was found and agreed upon between plaintiff and defendants that said defendants had in their possession or under their control and to the credit of the plaintiff the shares of corporate stock hereinafter referred to, and it was thereupon agreed between the plaintiff and the defendants that the said defendants would deliver said shares of stock to the plaintiff upon payment by the plaintiff to the defendants of an indebtedness of the plaintiff of the sum of $4,783.60 then found and agreed to be due defendants from said plaintiff, or at plaintiff's option to sell said shares upon plaintiff's instructions and apply the proceeds thereof to the payment of said indebtedness and to render any excess of such proceeds to the plaintiff." The defendants

filed an answer of general denial and the case was tried without a jury. The court rendered judgment for the plaintiff for the amount claimed. The case comes to this court upon the defendants' exceptions.

The following facts were shown by undisputed evidence: For some time prior to September 3, 1930, the plaintiff dealt with Sanderson & Company, a corporation, through it buying and selling stocks. He claimed that on that day Sanderson & Company, either itself or through Prince & Whitely, its New York agents, held for him the stocks enumerated in the declaration subject to an indebtedness from him to it of $4,783.60. Whether because of the advice or the importunities of one Schoen, as claimed by the plaintiff, or because, as claimed by the defendants, of information received that Sanderson & Company were on the verge of bankruptcy, the plaintiff, on September 3, wrote to the defendants, who were also engaged in the business of buying and selling stocks, asking them to "pay my debit balance at Sanderson & Company and receive from them securities standing in my account" and on the same day wrote to Sanderson & Company, notifying them of the instructions that were being given to the defendants and asking them "upon payment by Dean Witter & Company of amount due, please deliver to them securities in my account as shown by your last statement." On September 4 the defendants forwarded to plaintiff an acknowledgment of his request and made demand upon Sanderson & Company for the plaintiff's stocks. On September 5 Sanderson & Company furnished the defendants with a statement of the stocks held for the plaintiff and of the amount due from the plaintiff and told the defendants that "the account would be telegraphed to Prince & Whitely for transfer the same evening, September 5th." On September 6 the defendants forwarded to the plaintiff a statement (Ex. C) indicating

that they held for him the stocks in question subject to an indebtedness from him of $4,783.60. Shortly prior to these occurrences Sanderson, the head of Sanderson & Company, had left for New York, leaving instructions with his manager not to transfer any stocks until further notice and because of these instructions Duke Wong, who was acting as manager of Sanderson & Company in Honolulu, did not, until September 11, in fact cable to Sanderson's New York agents, Prince & Whitely, to make the transfer to the defendants or their agents and in the meantime assured the manager of the defendants that he, Wong, had so cabled on September 5. The margin maintained by Sanderson & Company with Prince & Whitely on all of their stock transactions was so low that when the request did reach Prince & Whitely for a transfer of the stocks to the agents of the defendants the request was refused; and the stocks in fact were never transferred. On September 16, and not until then, the plaintiff received a message from the defendants to the effect that they had not in fact received the possession or control of the stocks. He thereupon consulted counsel and on September 19, with full knowledge that the defendants did not hold and had not at any time held his stocks, wrote to the defendants directing them "to sell forthwith the list which you took over from Sanderson & Co., as per your invoice of the 6th * * * and apply the proceeds to credit on my account." The defendants replied, restating the facts and adding that "your account is still open with Sanderson & Co., Ltd."

So far as appears from the record the plaintiff made no effort to secure the stocks from Sanderson & Company and the latter subsequently went into bankruptcy.

The first and second counts are substantially the same, the only difference between them being that in the first it is said that the holding of the stocks by the defendants on September 6 was "pursuant to prior arrange-

ments," between the parties and in the second the statement is that the holding of the stocks by the defendants on September 19 was "pursuant to arrangements effected * * * on or about the 6th day of September." The significance of the distinction is not apparent. The essence of these two counts is that these defendants held the stocks of the plaintiff subject to an agreement on their part to sell them when directed so to do by the plaintiff, that the plaintiff directed them to sell the stocks, that they failed to obey the instructions and that by reason of this failure the plaintiff suffered damage in the sum of $2,707.02. The undisputed proof on the other hand is that the defendants did not at any time hold any of the stocks mentioned. There can be no doubt that the general rule is that a litigant cannot declare upon one cause of action and recover upon another. 49 C. J. 791-793; *Patillo* v. *Allen-West Commission Co.,* 108 Fed. 723, 726, 727. The action is brought upon the contract to sell and its breach. Upon the proofs, if the plaintiff is entitled to recover at all, he could only recover upon the wrong which the defendants committed by misrepresenting to him that they held the stocks when in truth and in fact they had not received them.

It is urged, however, that the defendants are estopped to deny that they received and held the stocks. Estoppel is an affirmative defense and the burden of alleging and proving the facts constituting the estoppel is upon the party relying upon that defense. *Daniels* v. *Bishop Trust Co., ante* 167, 174; 21 C. J. 1250. One of the essential elements of an estoppel such as this is that the person claiming the estoppel relied upon the representations of the other and because of such reliance suffered damage. In the case at bar there is not the slightest evidence tending to show that the plaintiff relied upon the representations of the defendants in failing to order a sale of the

stocks prior to September 19 or in failing prior to that date to secure the stocks direct from Sanderson & Company. So, also, there is not any evidence tending to show that, without the representation of the defendants of September 5, he could have secured control of the stocks or was in a position to pay the amount of his indebtedness to Sanderson & Company, or that, in other words, any damage was suffered by him in consequence of the erroneous representation of the defendants. It cannot be assumed without evidence either that the plaintiff did rely upon the representation of the defendants or that in consequence of such reliance he suffered damage. These elements must be affirmatively proven by the plaintiff before he can recover upon the theory of estoppel.

Another contention of the plaintiff seems to be that the evidence shows that by a novation the defendants were substituted for Sanderson & Company as the creditors of the plaintiff in the sum of $4,783.60 and also as the parties who, as holders of the stocks, obligated themselves to the plaintiff to dispose of them in the ways provided for in the original agreement between the plaintiff and Sanderson & Company. A novation is a contract. The intention of the parties is material. If the agreement is conditional, the novation can only take effect by the performance of the condition. 3 Williston on Contracts, § 1873; 20 R. C. L. 366, 369; 46 C. J. 582, 589; *Tannhauser* v. *Shea*, 88 Mont. 562 (74 A. L. R. 1021); *Rogers* v. *Thomson*, 214 N. Y. S. 193. If in the case at bar there was a novation, it was a conditional one. At best, if any such agreement was proven, it was that the defendants would be substituted in place of Sanderson & Company only upon transfer of the stocks to the control of the defendants and upon payment of the money ($4,783.60) by the defendants to Sanderson & Company. Neither of these events ever happened. Upon the evidence adduced, at no time did

Sanderson & Company lose the right to recover that sum of money from the plaintiff nor did the plaintiff lose his right to recover the stocks from Sanderson & Company or to direct them to sell. It is clear from the evidence that Dean Witter & Company did not agree to pay the $4,783.60 to Sanderson & Company unconditionally but only when they should receive control of the stocks from them. There was not an unconditional agreement between the three parties that on and after September 6, 1930, the defendants should be regarded as the holders of the stock, whether delivered to them or not, and that the defendants and not Sanderson & Company should be the parties entitled to recover the $4,783.60 from plaintiff. The plaintiff's case cannot be sustained upon the theory of a novation.

An account stated was neither pleaded nor proven. If the action had been by Dean Witter & Company against Hata for recovery of the balance of $4,783.60, the allegations of the third count probably would have sufficed to show that the parties had agreed each with the other that that was the sum due by Hata to Dean Witter & Company. But the action was by Hata against Dean Witter & Company, not for the contractual indebtedness of $4,783.60 but for the loss of $2,707.02 and there is no allegation that the parties came to an agreement that $2,707.02 was the amount of damages due from Dean Witter & Company to Hata. The only allegation made is that the agreement was that the defendants would deliver the stocks to the plaintiff upon payment by him to the defendants of the sum of $4,783.60 or would sell the stocks upon plaintiff's instructions, apply the proceeds to the payment of the indebtedness and render any excess of proceeds to the plaintiff. These are some only of the elements which in this action were necessary to be agreed upon by the plaintiffs in order to constitute an account

stated. "An account stated is an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." 1 A. & E. Ency. L. 437. "To constitute an account stated, the correctness of the balance must receive the assent, express or implied, of both parties. A certain fixed sum must be admitted by the one party to be due to the other." 1 C. J. 685. "When an agreement reached by the parties relates to one only of several essential elements involved in the contract, there is not an account stated such as will support an action of assumpsit thereon." *Wall* v. *Campbell, ante* 275. The proof went no further than the allegation. Exhibit C indicated that the parties were agreed that the amount due from the plaintiff to the defendants was $4,783.60 but there was no proof that they ever agreed that the defendants owed the plaintiff $2,707.02 or any other amount as damages for failure to sell the stocks or for the erroneous representation of September 6. On the contrary the evidence is undisputed that the defendants have never admitted any such indebtedness to the plaintiff.

The evidence was insufficient to support a judgment for the plaintiff. The judgment is set aside and a new trial is granted.

*W. H. Smith* (*D. E. Metzger* with him on the brief) for plaintiff.

*C. S. Carlsmith* and *C. W. Carlsmith* (*Carlsmith & Carlsmith* on the briefs) for defendants.