UNCLE JOHN'S OF HAWAII, Plaintiff–Appellant, v. MID–PACIFIC RESTAURANTS, WILLIAM C. ERICKSON, PAUL J. SPENGLER, JR., and DALE P. MADDEN, Defendants–Appellees, and RICHARD E. JANSEN, Defendant, and MID–PACIFIC RESTAURANTS and WILLIAM C. ERICKSON, Third–Party Plaintiffs–Appellees, v. UNCLE JOHN'S FAMILY RESTAURANTS, AL LAPIN, MICHAEL LENZINI, UJH, INC., a California corporation, and WESTERN FAMILY RESTAURANTS, Third–Party Defendants–Appellants

(CIV. NO. 86–1295)

and

UNCLE JOHN'S OF HAWAII, Plaintiff–Appellant, v. MID–PACIFIC RESTAURANTS, WILLIAM C. ERICKSON, PAUL J. SPENGLER, JR., and DALE P. MADDEN, Defendants–Appellees, and RICHARD E. JANSEN, Defendant

(CIV. NO. 86–1689)

NO. 13745

JUNE 28, 1990

PADGETT, ACTING C.J., HAYASHI,
WAKATSUKI, AND MOON, JJ., AND
INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE BURNS, IN PLACE OF
LUM, C.J., RECUSED

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment entered, pursuant to findings of fact and conclusions of law, in a jury–waived case. Essentially, the court below found fraud on the part of the appellants, and awarded damages. We affirm the finding of fraud, but modify the order for damages.

This appeal arises out of the consolidation of two civil cases. In Civil No. 86–1295, appellant Uncle John's of Hawaii (UJH), a limited partnership, filed a complaint alleging that Mid–Pacific Restaurants (Mid–Pac) (with William C. Erickson (Erickson) as its sole remaining limited partner), as a sublessee, had defaulted on its

sublease agreement by failing to submit to UJH, as sublessor, a monthly report of gross sales, along with a "franchise fee." The franchise fee under the sublease was two per cent of the gross sales. Mid–Pac and Erickson answered, and asserted affirmative defenses which included, among others, a defense that the provisions complained of were, in fact, a franchise agreement, subject to rescission for fraud, and a defense alleging a right of rescission for failure to comply with the provisions of Hawaii Revised Statutes (HRS) Chapter 482E, the Hawaii franchising law.

In addition, Mid–Pac and Erickson counterclaimed against UJH claiming that, prior to entering into the sublease agreement while the parties were still negotiating, certain material misrepresentations had been made upon which they relied, and that such misrepresentations constituted fraud.

Mid–Pac and Erickson filed a third–party complaint against the remaining appellants, Uncle John's Family Restaurants, Al Lapin, Michael Lenzini, UJH, Inc., a California corporation, and Western Family Restaurants. Again, there were claims of material misrepresentation and fraud.

In Civil No. 86–1689, a complaint for summary possession was filed by UJH against Mid–Pac, Erickson, Jansen, Spengler and Madden as partners of Mid–Pac in the district court on April 7, 1986. The complaint sought a writ of possession to the extent of UJH's interest in the premises and subject property in accordance with the terms of the sublease agreement.

In response to this complaint, appellants filed counterclaims of fraud and misrepresentation identical to those filed in Civil No. 86–1295. Demand for jury trial was made on April 22, 1986 and the case was transferred to the circuit court. Thereafter, the parties stipulated to consolidate Nos. 86–1689 and 86–1295.

Any attempt to recite the complex relationships between the appellants consisting of individuals, partnerships and corporations would unduly extend this opinion. A chronology tracing these

relationships however can be found in the findings of fact and conclusions of law, particularly findings 6, 9 and 12.

Essentially, the court below found that the appellants made material misrepresentations, amounting to fraud, to the appellees, and that in issuing the sublease and accompanying letter, appellants had breached the provisions of HRS Chapter 482E.

Appellants attack numerous findings of fact, but on a review of the record, we conclude that the findings of fact are supported by substantial evidence, and are not clearly erroneous.

Appellants' first argument is that they did not violate the franchise law. This argument is based upon a contention that the transaction with Mid–Pac was such that appellants were exempted by HRS § 482E–4(a)(7) from furnishing an offering circular. That section exempts:

> The offer or sale of a franchise by a franchisee for the franchisee's own account, or the issuance of a new franchise agreement pursuant to a sale by a franchisee for the franchisee's own account, if the sale is an isolated sale and not part of a plan of distribution of franchises.

Appellant UJH had the franchise rights for the Uncle John's name in Hawaii, and also had two restaurants in Hawaii. It subleased one of those restaurants to Mid–Pac. The sublease provided in part:

> 2. FRANCHISE FEE:
>
> In addition to the payment due pursuant to the lease, the Sublessee agrees to pay to the Sublessor a franchise fee of 2% of their gross sales each and every month during the term of this sublease or so long as the Sublessee uses the name of Uncle John's restaurant, whichever period is longer.

On the same day that the sublease was signed, UJH, in a letter to Mid–Pac, stated:

> Dear Sirs:

> We hereby grant to you the exclusive right to operate res-
> taurants in the state of Hawaii under the Uncle John's
> name on the following terms and conditions:
> 1) You will pay us a monthly fee of 2% of the gross
>    sales of each such restaurant.

Here appellants sold the Uncle John's Pearlridge restaurant, and the franchise rights to the Uncle John's name in Hawaii to appellees. The exemption is in the disjunctive, not the conjunctive. This was not an isolated sale of a franchise or an isolated sale of franchise rights, and the exemption is inapplicable.

Appellants' second argument is that the appellees waived any right to rescission they had, because they first asserted the fraud, and the right to rescission, more than a year after they learned the facts which the court below found made the representations which had been made to them fraudulent. In this connection, appellants cite cases from other jurisdictions where delays of comparable time periods were held to have constituted waivers. As we understand it, appellants' argument is that there was a waiver *as a matter of law* in this case. Appellants cite us to 91 C.J.S. *Vendor and Purchaser* § 171(b), at 1135 (1955), where it is stated:

> Independent of statutes of limitations, the purchaser
> in rescinding for fraud must act promptly on discovering
> the fraud or he loses the right to rescind on that ground,
> and this is true especially where the land is liable to large
> and constant fluctuations in value, or where the land was
> purchased and held for speculative purposes. In order to
> have this effect, however, the delay must generally be
> after knowledge of the fraud, and must be unreasonable
> under the circumstances of the particular case, taking into
> consideration, among other circumstances, the relation to
> each other of the parties. Lapse of time will not bar relief
> where circumstances are shown to exist which excuse the
> delay and render the denial of relief inequitable[.]

(Footnotes omitted.)

Appellants frame their argument on the basis of the doctrine of waiver. As we have said in another context,

> "Waiver is generally defined as an 'intentional relinquishment of a known right,' a 'voluntary relinquishment of some rights,' and 'the relinquishment or refusal to use a right.' *State Savings & Loan v. Kauaian Development Company*, 50 Haw. 540, 557, 445 P.2d 109, 121 (1968); *Robinson v. McWayne*, 35 Haw. 689, 719 (1940)." *Anderson v. Anderson*, 59 Haw. 575, 586–87, 585 P.2d 938, 945 (1978).

*Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 99, 108, 705 P.2d 28, 36 (1985).

In contrast to appellants' waiver argument, appellees treat the issue, in their brief, as one of laches. For the equitable doctrine of laches to apply as a matter of course, as we have said,

> [t]here are two components to laches, both of which must exist before the doctrine will apply. First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances.

*Adair v. Hustace*, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982).

A related doctrine is equitable estoppel, but for there to be an estoppel, there must have been some detrimental reliance on the part of the party setting up the defense. *Hata v. Dean Witter*, 32 Haw. 760 (1933); *DeFreitas v. Trustees of the Campbell Estate*, 46 Haw. 425, 380 P.2d 762 (1963).

We do not believe that, on the evidence in this case, it must be inferred, as a matter of law, that the appellees had voluntarily relinquished their right to rescission or, that as a matter of law, their delay in asserting their right to rescission was unreasonable or, that as a matter of law, appellants acted to their detriment in reliance on the delay of appellees in asserting their right. On the evidence, the

court below in its factual findings could have found either way on these issues and, accordingly, there was no error.

Appellants next argue that the findings of fraud are baseless. We cannot agree. There is substantial evidence to support the findings of fraud and, therefore, those findings are not clearly erroneous.

Appellants also argue that the damages below were improperly calculated. With this contention we agree in part. Appellants received some $200,000 for their position in the Uncle John's Pearlridge lease. The court below imposed a constructive trust upon this amount, less the $37,018.29 which was credited to the back rent due and owing from appellees. Appellees argue that this amount was awarded to them on the theory that the appellants had tortiously interfered with a business opportunity. The fact remains, however, that the award of this amount is inconsistent with a rescission of the sublease, since absent a sublease, appellees would have had nothing to offer for sale. It was error, on the part of the court below, to award the sum of $162,981.71 to the appellees as damages in conclusion of law 18 and to credit appellees with the $37,018.29.

We therefore order the entry of an amended judgment of $1,009,275.73. Affirmed in part and reversed in part, and remanded for entry of an amended judgment.

*Alexander C. Marrack* (Reinwald, O'Connor, Marrack, Hoskins & Playdon) for appellants.

*W. Gregory Chuck* (Chuck Jones & MacLaren; *John S. Edmunds* with him on the brief, Edmunds, Verga, Van Etten & O'Brien) for appellees.